JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Deborah Blair
413 Radcliffe Way, Downingtown, PA 19335

**DEFENDANTS**
The Vanguard Group, Inc.
100 Vanguard Boulevard, Malvern, PA 19355

**(b)** County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian L. McCarthy, Esq., Egan & McCarthy
657 Exton Commons, Exton, PA 19341, 610-567-3436

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 2000e; 42 U.S.C. 12101; 29 U.S.C. 2601
Brief description of cause:
Employment Discrimination and Retaliation (sexual harassment, disability), FMLA Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
150,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/05/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Deborah Blair
413 Radcliffe Way, Downingtown, PA 19335

### DEFENDANTS
The Vanguard Group, Inc.
100 Vanguard Boulevard, Malvern, PA 19355

**(b)** County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian L. McCarthy, Esq., Egan & McCarthy
657 Exton Commons, Exton, PA 19341, 610-567-3436

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 690 Other | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** ☐ 365 Personal Injury - | | | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Product Liability | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 2000e; 42 U.S.C. 12101; 29 U.S.C. 2601
Brief description of cause:
Employment Discrimination and Retaliation (sexual harassment, disability), FMLA Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/05/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 413 Radcliffe Way, Downingtown, PA 19335

Address of Defendant: 100 Vanguard Boulevard, Malvern, PA 19355

Place of Accident, Incident or Transaction: Vanguard's Campus, Malvern PA

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/05/2018          _____          319722

                                  *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

*A.*    *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
    *(Please specify):* Title VII/ADA Discrimination, FMLA retaliation

*B.*    *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Brian Lee McCarthy , counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 12/05/2018          _____          319722

                                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 413 Radcliffe Way, Downingtown, PA 19335 _____

Address of Defendant: _____ 100 Vanguard Boulevard, Malvern, PA 19355 _____

Place of Accident, Incident or Transaction: _Vanguard's Campus, Malvern PA_ _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | Yes | No |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | ☐ | ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | ☐ | ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | ☐ | ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | ☐ | ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **12/05/2018** _____ **319722**
_Attorney-at-Law / Pro Se Plaintiff_   _Attorney I.D. # (if applicable)_

---

CIVIL: (Place a √ in one category only)

*A.* *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* Title VII/ADA Discrimination, FMLA retaliation

*B.* *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ **Brian Lee McCarthy** _____, counsel of record or pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: **12/05/2018** _____ **319722**
_Attorney-at-Law / Pro Se Plaintiff_   _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Deborah Blair        :      CIVIL ACTION

     v.        :

The Vanguard Group, Inc,    :      NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X)

12/05/2018      Brian L McCarthy      Plaintiff
**Date**        **Attorney-at-law**        **Attorney for**

610-567-3456      1-610-423-5885      eganMccarthylaw@gmail.com
**Telephone**        **FAX Number**        **E-Mail Address**

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Deborah Blair

v.

The Vanguard Group, Inc,

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| Date | Attorney-at-law | Attorney for |
|---|---|---|
| 12/05/2018 | Brian M McCarthy | Plaintiff |
| 610-567-3436 | 1-610-423-5885 | eganMcCarthylaw@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

**Egan & McCarthy, Attorneys at Law**
Gerard P. Egan, Esq. (20744)
Brian L. McCarthy, Esq. (319722)
657 Exton Commons
Exton, PA 19341
610-567-3436

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH BLAIR** | : | **CIVIL ACTION** |
| | : | |
| **413 Radcliffe Way** | : | |
| **Downingtown, PA 19335** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **JURY TRIAL BY TWELVE** |
| **v.** | : | **(12) JURORS DEMANDED** |
| | : | |
| **THE VANGUARD GROUP, INC.** | : | |
| | : | |
| **100 Vanguard Boulevard** | : | |
| **Malvern, PA 19355** | : | |
| | : | |
| **Defendant** | : | |

## CIVIL COMPLAINT

NOW COMES Plaintiff Deborah Blair who, by and through counsel, bring this action for damages suffered as a result of the discriminatory and retaliatory actions of the above-captioned Defendant pursuant to Title VII of the Civil Rights Act of 1964, disability discrimination and retaliation under the Americans with Disabilities Act of 1990, and retaliation under the Family Medical Leave Act of 1993. In support thereof, Plaintiff avers the following:

### Parties

1

1. Plaintiff Deborah Blair ("Plaintiff" or "Ms. Blair") is an adult individual whose primary residence is 413 Radcliffe Way, Downingtown, PA 19335, in Chester County, in the Eastern District of Pennsylvania.

2. Defendant The Vanguard Group, Inc. ("Defendant" or "Vanguard"), is a Pennsylvania corporation that employs 15 or more employees for each workday for each of 20 weeks in a calendar year, with its corporate headquarters located at 100 Vanguard Boulevard, Malvern, PA 19355, in Chester County, in the Eastern District of Pennsylvania.

**Jurisdiction**

3. Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), this Court has subject matter jurisdiction, specifically federal question jurisdiction, over Plaintiff's claims arising under 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, or "Title VII"), 42 U.S.C. § 12101 *et seq.* (The Americans with Disabilities Act of 1990, or "ADA"), and 29 U.S.C. § 2601 *et seq.* (the Family Medical Leave Act of 1993, or "FMLA") on the basis that Ms. Blair suffered an adverse employment action as the result of retaliation for engaging in protected activity against ongoing sexual harassment, age discrimination, and retaliation for exercising her rights under the FMLA.

4. Personal jurisdiction is appropriately exercised by this Court over all of the parties because, at all relevant times herein, Plaintiff was a resident of the Eastern District of Pennsylvania, and Defendant's corporate headquarters are based in the Eastern District of Pennsylvania. Additionally, the acts and omissions complained of herein all took place on Defendant's corporate campus located in the Eastern District of Pennsylvania.

**Venue**

5. Pursuant to 28 U.S.C. § 1391(b)(2), the Eastern District of Pennsylvania is the appropriate venue for this action, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this venue.

6. Specifically, the events in question all occurred in the Eastern District of Pennsylvania, the overwhelming majority of witnesses and evidence in this matter would be located in the Eastern District of Pennsylvania, and all of the parties are situated in the Eastern District.

## Exhaustion of Administrative Remedies

7. On or about August 17, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

8. Plaintiff's Charge of Discrimination alleged discrimination on the basis of sex, disability, age, and retaliation, that culminated in Plaintiff being forced to take FMLA leave, only to return to find that her position had been given to someone else.

9. On September 6, 2018, the EEOC issued a Notice of Right to Sue following its investigation.  A copy of the EEOC Notice is attached as "Exhibit A."

## Factual History

10. Plaintiff hereby incorporates each of the foregoing averments by reference as though fully set forth herein.

### Background

11. For over twenty years, Ms. Blair has worked for Vanguard, an investment advisor that employs over 16,000 employees, and is headquartered in Malvern, Pennsylvania.

12. Vanguard's headquarters also serves as a sprawling campus where its various employees work.  There are multiple buildings on Vanguard's campus where various departments are based.

13. Ms. Blair's position, at all times relevant herein, was as Line Manager in Production Services. Plaintiff's position entailed global information technology management and production support, employing safeguards for protecting Defendant's information, and troubleshooting and resolving information technology problems that, if left unchecked, could have had devastating consequences for Vanguard and its many clients. This included running Vanguard's "Production Center of Excellence", and pricing Vanguard's massive investment portfolio--collectively worth literally trillions of dollars--on a nightly basis.

14. Prior to late 2017, Ms. Blair received overwhelmingly positive performance reviews, without any meaningful negative comments. Performance reviews were administered twice annually, first as a "midyear" review, and again as a "final review." These reviews, which include her 2016 end-year and 2017 mid-year performance reviews, also included glowing praise from her peers and the team of employees who she supervised.

15. From approximately 2013 to 2016, Ms. Blair's team worked out of the RAD Building, one of the many various buildings located on Vanguard's campus.

16. While working at the RAD Building during this time period, Ms. Blair was the subject of on-going, pervasive, and invidious sexual harassment carried out by multiple male co-workers from a separate department housed in the same building.

17. This sexual harassment included a myriad of "wolf-whistles" and "cat-calls" whenever Ms. Blair walked by these men, and multiple, sexual comments about her appearance. One such comment was that Plaintiff had the body of a specific adult film actress.

18. In a separate incident, at a work event, another male co-worker from the RAD Building made multiple disparaging and suggestive comments about Ms. Blair's physical appearance, and asked her to sit on his lap.

19. Ms. Blair reported this on-going harassment to Human Resources, but this did nothing to ameliorate the harassment, which persisted, with further lewd comments and whistles from the men in question.

20. This pervasive harassment had severe detrimental effects on Ms. Blair's health and well-being, resulting in her diagnosis of anxiety, depression, and high blood pressure.

21. In September 2016, Ms. Blair's team was re-located to a separate building, the Theseus Building ("Theseus"), where the ongoing sexual harassment from the past several years was not present, as the men who engaged in the harassment were not present at this building. Ms. Blair's health and symptoms resulting from the harassment at the RAD Building greatly improved.

22. Ms. Blair's reports to Human Resources and concerns about the ongoing sexual harassment were well-known to others at Vanguard, including Ms. Blair's manager at the time of the move to Theseus, Devang Patel ("Patel").

23. In late 2016, after the move from the RAD Building to Theseus, Ms. Blair specifically told Patel that she could not go back to the RAD Building due to the sexual harassment she suffered there and the effects the harassment had on her life and health. Patel told Plaintiff that he understood and indicated that Ms. Blair would not have to return to work at the RAD Building.

24. Mary Ann Fornarol ("Fornarol") succeeded Patel as Ms. Blair's manager in September 2017. At this time, Ms. Blair was still working out of Theseus.

25. As with Patel, Ms. Blair specifically informed Fornarol of the harassment Ms. Blair had suffered at the RAD Building and the effects the harassment had on her health, and asked

that she never be forced to work there again.  Fornarol expressly promised: "I will never send you back."

Basis for Instant Action

26. By late 2017 to early 2018, notwithstanding her prior promise to Ms. Blair and her knowledge of the pervasive sexual harassment she suffered over a three-year period, Fornarol informed Ms. Blair that her team would be returning to the RAD Building, and that Ms. Blair would be required to work there full time.

27. When Ms. Blair protested to Fornarol, citing her previous discussions with Fornarol and the toll the harassment had taken on her, Fornarol issued Ms. Blair's 2017 end-year performance review, which for the first time was negative.

28. Back-and-forth correspondence ensued in early 2018 between Ms. Blair, Fornarol, and Nina Mattson-Thomas ("Mattson-Thomas"), in Vanguard's Human Relations Department about whether or not Ms. Blair could be forced to return to work in the RAD Building. Fornarol became increasingly inconsistent in her positions, indicating that Ms. Blair did not have to return to the RAD Building, before saying again that Ms. Blair would in fact have to work there.

29. Throughout these discussions, the anxiety and depression Ms. Blair had suffered during the three years of harassment at the RAD Building returned, including physical symptoms such as heart palpitations and dangerously high blood pressure, forcing Ms. Blair to seek medical attention from a physician and a psychologist.

30. On February 16, 2018, Fornarol directly informed Ms. Blair that, despite Ms. Blair's concerns and the history of harassment she had suffered there, Ms. Blair had no choice as to where she could work, and would have to leave Theseus and work at the RAD Building.

31. When Ms. Blair asked whether she could simply work from home, Fornarol forbade this, stating that Ms. Blair needed to be "present", on site, for her team.

32. The suggestions of working from home, and of working from Theseus rather than the RAD Building, were made by Ms. Blair's doctors to ameliorate her anxiety, depression, and high blood pressure.

33. Following this encounter on February 16, 2018, and due to the extreme anxiety, depression, heart palpitations, and high blood pressure Ms. Blair was suffering, Ms. Blair took short term disability leave and FMLA leave, pursuant to the recommendations of her doctor, who provided Vanguard with a note setting forth the reason for her leave.

34. Ms. Blair returned from FMLA leave on May 10, 2018.  When she returned, Ms. Blair discovered, without prior notice, that she no longer held her previous position--one she had held for three years at the time after her working her way up through the corporate ladder for nearly two decades--because Fornarol had given Ms. Blair's position to another employee.

35. This directly contradicted a conversation Ms. Blair had with Mattson-Thomas on April 16, 2018, while on leave.  During this conversation, Mattson-Thomas informed Ms. Blair that while Fornarol intended to send Ms. Blair's team to the RAD Building, Ms. Blair would be allowed to continue working in Theseus.  This was specifically because of the history of sexual harassment Ms. Blair suffered at the RAD Building and her previously expressed concerns to Fornarol and Mattson-Thomas.

36. Additionally, Mattson-Thomas informed Ms. Blair that her position would be held for her, and would be waiting for her upon her return from FMLA leave.

37. During this phone conversation, Ms. Blair requested that Mattson-Thomas confirm the foregoing terms in writing.  Mattson-Thomas refused.

38. On May 10, upon her return from FMLA leave, Ms. Blair learned that Fornarol had not honored this promise by giving her position to another employee, Amy Toth ("Toth"), who lacked the experience and qualifications of Ms. Blair, through indirect channels such as e-mails, voicemails from Human Resources, and conversations with co-workers.  Fornarol did not directly inform Ms. Blair that her position had given to another employee during Ms. Blair's FMLA leave.  Ms. Blair had been given a different position with fewer responsibilities in Data Center Transformation.

39. Also on May 10, Ms. Blair attended a Vanguard leadership conference at Quarry Ridge (another location on Defendant's campus).

40. At the conference, a male Vanguard employee, Nick Caruso ("Caruso"), engaged in multiple instances of sexually harassing behavior directed towards Ms. Blair in front of her peers, including Larry Towle ("Towle"), a previous supervisor of Blair's.

41. Caruso made multiple lewd, inappropriate, and sexually suggestive comments about Ms. Blair's appearance in front of her peers, including "oh, look at this!"; "we missed that" (referring to Ms. Blair's physical appearance); and "I hate your dress".

42. Ms. Blair felt humiliated and demeaned by Caruso's harassment--which came the day Ms. Blair returned from FMLA leave.  Nothing was done by any of the multiple witnesses in attendance, including Towle, to stop or ameliorate the harassment.

43. In another instance following Ms. Blair's return from FMLA leave, another male Vanguard employee, Andrew Lazarro ("Lazarro"), stood directly behind Ms. Blair, tapped her on the

shoulder, and told her that for "over the shoulder training", Ms. Blair would have to put her hair up.  He repeated this again after Ms. Blair ignored him.

44. On May 11, the employee who Fornarol replaced Ms. Blair with, Amy Toth, who knew Ms. Blair was upset over losing her position during FMLA leave, told Ms. Blair that Fornarol "is not going to give you your job back."  Toth also described Fornarol as "evil" to Ms. Blair.

45. Less than two-weeks later, Fornarol issued Ms. Blair's 2018 mid-year review--despite Ms. Blair being out on leave from mid-February through May 10.

46. Fornarol's review was scathing, overwhelmingly negative, far worse than the 2017 end-year review, and included numerous comments and observations that were flatly false, untrue, and easily rebuttable.

47. For example, Fornarol's review stated that Ms. Blair was not trusted or respected by her team members.  Yet multiple team members approached Ms. Blair upon her return from FMLA leave expressing relief that she was back, telling her she was missed, and complaining that Toth was not as good as Ms. Blair.

48. Additionally, Ms. Blair was also told by another employee that Fornarol allowed Toth to work from home and come in late.  This was in direct contradiction to Fornarol's previous statement that Ms. Blair had to work in the RAD Building because she had to be on site at all times.

49. On or about May 24, 2018, Ms. Blair submitted a point-by-point rebuttal to the inaccuracies and false statements in Fornarol's scathing review, referencing the loss of her position and Fornarol's threatened placement of Ms. Blair back in the RAD Building, necessitating her FMLA leave.

50. Upon reading Ms. Blair's rebuttal, Fornarol immediately turned hostile and confrontational towards Ms. Blair, by: humiliating Ms. Blair in public meetings by skipping over her and pointedly ignoring her; accusing Ms. Blair of being negative and not being able to accept feedback based on her rebuttal; requiring Ms. Blair to solicit personal feedback about herself from her own co-workers (which was humiliating and demeaning, yet was all positive, and directly contradictory to Fornarol's review);  singling out Ms. Blair during group meetings and presentations, setting her up for failure, while praising similarly situated male colleagues, such as Towle during a meeting on July 24; telling Ms. Blair on July 20, 2018, that Ms. Blair needed to start "proving her value"; accusing Ms. Blair on August 3, 2018 of not trusting Fornarol; and awarding everyone on Ms. Blair's team for their efforts in organizing a corporate event, except for Ms. Blair herself.

51. Most of these instances came after Vanguard's receipt of a notice to sue letter sent on Ms. Blair's behalf dated July 13, 2018, specifically citing the sexual harassment and FMLA retaliation.

52. On or about August 27, 2018, extremely distraught, demeaned, and humiliated due to this ongoing harassment and hostile treatment, Ms. Blair met with Carol Dow ("Dow"), Fornarol's direct superior.

53. Dow lauded Ms. Blair's work, and further commended Ms. Blair on her rebuttal to Fornarol's review.  However, despite Ms. Blair bringing up the loss of her position while out on FMLA leave several times, Dow ignored these comments.

54. Dow further asked, unsolicited, whether the "sexual harassment had been taken care of", and agreed with Ms. Blair that Fornarol's conduct was humiliating and improper.  By the end of the meeting, Dow promised Ms. Blair that she would "get back to you on this."

55. After several weeks without any response from Dow, Ms. Blair followed up with Mattson-Thomas, who told Ms. Blair that Dow had not made a record of the August 27 meeting, and had been transferred to a completely different building.  Nothing ever resulted from the meeting with Dow.

56. The hostile environment with Fornarol persisted, with Ms. Blair's attendant physical symptoms worsening, yet by October 2018, Ms. Blair was informed that she was to oversee a complicated data transfer--something that was supposed to be within Toth's duties, *i.e.*, the duties of the position Ms. Blair previously held, and lost while on FMLA leave.

57. Ms. Blair was expected to oversee the entire project, without any restoration of her position or pay increase.  The project would have entailed overtime hours and working on weekends.

58. No longer able to endure the humiliating and demeaning retaliatory environment, combined with the increased pressure of the added responsibilities without any correlating compensation or restoration of her old privileges, Ms. Blair, upon the recommendation and note of her psychologist, Dr. Dennis Given, went on leave on October 19, 2018.

## COUNT I

## VIOLATION OF TITLE VII--SEXUAL HARASSMENT AND RETALIATION

59. Plaintiff hereby incorporates each of the foregoing averments by reference as though fully set forth herein.

60. Prior to the events forming the basis for the instant action, Ms. Blair suffered severe and pervasive sexual harassment for three years at the RAD Building in the form of explicit sexual comments and lewd behavior on a frequent and recurring basis.

61. This history of harassment was well-documented with Defendant's Human Resources and was well-known by Ms. Blair's supervisors, including Fornarol, by Februrary 2018.

62. Human Resources and Fornarol were also aware, by February 13, 2018, that Ms. Blair had told supervisors including Patel and Fornarol that she was able to thrive in Theseus because she no longer had to endure or be concerned about sexual harassment, and that she could not return to the toxic and harassing environment of the RAD Building.

63. While the past history of sexual harassment is outside the scope of the instant case in terms of actionable conduct, Ms. Blair's repeated comments to Human Resources and Fornarol that she could not return to the RAD Building because of the sexual harassment there resulted in ongoing retaliatory conduct by Fornarol and Defendant against Ms. Blair for these complaints and reported concerns.

64. This retaliation included: removing Plaintiff from her position without prior notice, while she was on FMLA leave; Fornarol's delivering of a baseless and scathing negative mid-year review in 2018, when Ms. Blair had only work approximately two months of the year by the time of her review; and the campaign of humiliating and demeaning conduct carried out by Fornarol, described *supra*.

65. This latter series of conduct was largely carried out by Fornarol *after* Ms. Blair, through counsel, sent Defendant a notice to sue letter referencing sexual harassment and retaliation. This conduct included demeaning Ms. Blair by forcing her to report to her subordinates for feedback; humiliating Ms. Blair by skipping her in meetings; favoring male employees during meetings over Ms. Blair; and ongoing aggressive and hostile meetings between Fornarol and Ms. Blair.

66. When Ms. Blair again attempted to have this conduct ameliorated via a meeting with Fornarol's superior, Carol Dow, during which Dow promised she would take care of Ms. Blair's concerns, Ms. Blair was subsequently told by Mattson-Thomas that, conveniently, there was no written log of Dow's meeting with Ms. Blair, and that Dow had been transferred to a completely different location within Vanguard.  Shortly afterwards, Ms. Blair was tasked with heightened responsibilities, without corresponding compensation, and without restoration of her old position.

67. The totality of the circumstances, not the least of which is the timing, of each of the foregoing instances illustrates retaliatory intent on the part of Defendant, through its agents including Fornarol and Mattson-Thomas, for Ms. Blair's protected activity, including logging complaints of being forced to return to a sexually harassing environment, sending a notice to sue letter citing sexual harassment and retaliation, and meeting with the supervisor of her harasser (Fornarol), only to find that the supervisor was moved, no log was made of the meeting, and her responsibilities unfairly and unreasonably increased.

68. Finally, in addition to the foregoing retaliation, Ms. Blair continued to endure sexual harassment upon her return from FMLA leave, including the ongoing sexual harassment on May 10 from Caruso, the physical contact and inappropriate comments about her appearance by Lazarro, and Fornarol's blatant favoring of male co-workers such as Towle during meetings and presentations.

69. This conduct, especially when considered with the previous pattern of harassment suffered by Ms. Blair at the RAD building, constitutes a hostile work environment under the totality of the circumstances.

70. Ms. Blair has suffered mental anguish, emotional distress, loss of self-esteem, loss of earnings and future earning potential, and loss of life's pleasures, including the extreme depression, anxiety, and high blood pressure she has been diagnosed with a result of the foregoing harassment and retaliation.

71. Accordingly, Plaintiff has suffered damages in the form of compensatory damages in excess of $150,000; punitive damages; reasonable attorney's fees; emotional distress; and the right to front pay and back pay, where appropriate.

WHEREFORE, Plaintiff Deborah Blair respectfully prays this Honorable Court for compensatory damages in excess of $150,000; punitive damages; attorney's fees; emotional distress; front pay and back pay, if appropriate; and any other relief this Honorable Court deems necessary, fair, and appropriate.

## COUNT II

## DISABILITY DISCRIMINATION AND RETALIATION UNDER THE ADA

72. Plaintiff hereby incorporates each of the foregoing averments by reference as though fully set forth herein.

73. In February 2018, Defendant, through its Human Resources Department and Fornarol, were specifically aware that Ms. Blair had been diagnosed with extreme anxiety, depression, and high blood pressure as a result of the harassment she had suffered at the RAD Building.

74. Defendant also aware, by February 2018, of Ms. Blair's steadfast opposition to returning to the RAD Building, which Fornarol had informed Ms. Blair was necessary, and of the deleterious effect returning to the RAD Building would have on Ms. Blair's health.

14

75. Ms. Blair requested a reasonable accommodation from Fornarol in the form of working from Theseus instead of returning to the RAD Building.  Fornarol refused this.

76. Ms. Blair also requested a reasonable accommodation by working from home.  Fornarol refused this as well--despite later allowing Amy Toth, Ms. Blair's replacement, to do so.

77. This refusal to accommodate Ms. Blair's extreme anxiety, depression, and high blood pressure necessitated Ms. Blair's taking of FMLA leave.

78. While on FMLA leave, Mattson-Thomas promised Ms. Blair that she would still have her position upon her return, and that she would be permitted to work from Theseus, and not the RAD Building.

79. Mattson-Thomas refused to put this in writing when asked, and upon her return from FMLA leave, Ms. Blair discovered that not only did Defendant refuse to honor this promise, but Fornarol had given Ms. Blair's position to another, less qualified employee.

80. The foregoing constitutes disability discrimination against Ms. Blair for her extreme anxiety, depression, and high blood pressure; refusal to provide reasonable accommodations for said disability despite providing such accommodations to people such as Toth without the same conditions; and retaliation against Ms. Blair for complaining of said discrimination and refusal to provide reasonable accommodation.

81. As a result of the foregoing disability and retaliatory harassment carried out by Defendant, Ms. Blair has suffered mental anguish, emotional distress, loss of self-esteem, loss of earnings and future earning potential, and loss of life's pleasures.

82. Plaintiff has also incurred punitive damages, based on the outrageous and malicious nature of Defendant's conduct, in an exact amount to be determined at trial.

83. Plaintiff also requests reasonable attorney's fees and costs, as well as any other relief deemed appropriate by this Court, and front pay and back pay, if appropriate.

WHEREFORE, Plaintiff Deborah respectfully prays this Honorable Court for compensatory damages in excess of $150,000; punitive damages; attorney's fees; emotional distress; front pay and back pay, if appropriate; and any other relief this Honorable Court deems necessary, fair, and appropriate.

## COUNT III

## RETALIATION UNDER THE FMLA

84. Plaintiff hereby incorporates each of the foregoing averments by reference as though fully set forth herein.

85. Plaintiff properly invoked her right to FMLA leave in February 2018, and was on FMLA leave until May 10, 2018.

86. While Plaintiff was on FMLA leave, on April 16, 2018, Mattson-Thomas specifically promised Ms. Blair that her position would be held for her, and that upon her return she could not only return to her position, but also work from Theseus instead of returning to the harassing environment of the RAD Building.

87. Mattson-Thomas refused to put this promise in writing, and upon Ms. Blair's return she learned that Defendant, through Fornarol, had taken away Ms. Blair's position and given it to Toth, a less qualified and less experienced employee. Ms. Blair was subsequently given a lesser position.

88. Ms. Blair also received a scathing, negative, and baseless mid-year review from Fornarol, despite being on FMLA leave for most of the year. This review is filled with baseless, false, and easily refuted facts, and will forever remain a part of Ms. Blair's personnel file.

16

89. Finally, Fornarol engaged in a campaign of humiliating, demeaning, and hostile conduct that directly and adversely affected Ms. Blair's job performance as well as her overall health and well-being.

90. This conduct (described *supra*) largely came after not only her return from FMLA leave, but after Ms. Blair, through counsel, sent Defendant a notice to sue letter citing FMLA retaliation.

91. Additionally, Ms. Blair met with Dow, Fornarol's superior, in August 2018, and specifically referenced the loss of her position and hostile treatment by Fornarol.  Dow refused to specifically acknowledge Ms. Blair's FMLA retaliation claims, but promised she would speak with Fornarol.

92. Instead, Ms. Blair never heard anything from Dow in the weeks following the meeting, and subsequently was told by Mattson-Thomas that there was no written log of the meeting, and that Dow had been transferred to a completely different building.

93. Shortly after this, Ms. Blair was given increased responsibilities--the same responsibilities of her previously held position--for a high pressure and important task, without increased compensation or restoration of her position.

94. The retaliatory intent and causal relation required under the FMLA is fairly inferred from the timing of Fornarol's removal of Ms. Blair from her position--without any notice whatsoever--after Ms. Blair was already on FMLA leave, and when Ms. Blair was promised by Mattson-Thomas she would retain her position.  Each instance of retaliatory conduct by Fornarol likewise followed Ms. Blair's attempts to follow-up on or record a complaint about the loss of her position during FMLA leave and her subsequent treatment upon return from FMLA leave.

17

95. Based on the foregoing, Plaintiff has suffered compensatory damages in excess of $150,000; interest, if appropriate; and attorney's fees and costs.

WHEREFORE, Plaintiff Deborah Blair respectfully prays this Honorable Court for relief in the form of compensatory damages in excess of $150,000 in an exact amount to be determined at trial; interest; attorney's fees and costs; and any other relief this Court deems necessary, fair, and appropriate.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff Deborah Blair prays for the following relief against the above-captioned Defendant:

(1)     Compensatory damages, in excess of $150,000, in an exact amount to be determined at trial;

(2)     Punitive damages, in an exact amount to be determined at trial;

(3)     Attorneys' fees and costs;

(4)     Front pay and back pay, where appropriate;

(5)     Interest; and

(6)     Any other relief this Honorable Court deems necessary, fair, and appropriate.

Respectfully Submitted,

Gerard P. Egan, Esq. (207441)
Brian L. McCarthy, Esq. (319722)
Egan & McCarthy, Attorneys at Law
657 Exton Commons
Exton, PA 19341
610-567-3436

Date: 12/05/18

18

## VERIFICATION

I, Deborah Blair, hereby verify that I am sufficiently familiar with the facts and circumstances contained herein and that they are true and correct to the best of my knowledge, information, and belief. I understand that false statements are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities

Date: 12/4/2018

Deborah Blair

## DEMAND FOR JURY TRIAL

Pursuant to F.R.C.P. 38, Plaintiff Deborah Blair demands a jury trial by twelve (12) jurors on all claims.

Date: 12/05/18

Respectfully Submitted,

Gerard P. Egan, Esquire (20744)
Brian L. McCarthy, Esquire (319722)
Counsel for Plaintiff

20

# EXHIBIT A

EEOC Form 161 (11-16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:

Deborah Blair
413 Radcliffe Way
Downingtown, PA 19335

From:

Philadelphia District Office
801 Market Street
Suite 1300
Philadelphia, PA 19107

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2018-05018 | Legal Unit, Legal Technician | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*

_____
Jamie R. Williamson,
District Director

September 6, 2018
_____
*(Date Mailed)*

Enclosures(s)

cc:     Courtney W. Griffin, Senior Counsel, Employment
        THE VANGUARD GROUP, INC.